## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

TIMOTHY OLSON                          :
                                       :
                                       :
  v.                         :  Civil No. CCB-13-1882
                                       :
                                       :
MIDLAND FUNDING, LLC, et al.           :
                                       :

## MEMORANDUM

  Plaintiff Timothy Olson filed this action against Midland Funding, LLC ("Midland Funding") and Midland Credit Management, Inc. ("MCM"), (collectively "Midland"), and Lyons, Doughty & Veldhuis, P.C. ("LDV"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), the Maryland Consumer Debt Collection Act ("MCDCA"), and the Maryland Consumer Protection Act ("MCPA"). Both Midland and LDV have filed motions to dismiss. The parties have fully briefed the issues, and no hearing is necessary. *See* Local Rule 105.6. For the reasons set forth below, the motions will be granted.

## BACKGROUND

  In December 2010, Midland sued Olson in Maryland District Court in St. Mary's County to collect an unpaid credit card debt that Midland bought from Olson's original creditor, Chase Bank. (Am. Compl., ECF No. 11, ¶ 47). According to the complaint, Olson was never properly served with the lawsuit. (Am. Compl. ¶ 62). Although he lived in St. Mary's County when the suit was filed against him, Olson moved to Baltimore City soon after, and before he was served. (Am. Compl. ¶ 63). He did, however, discover the lawsuit in December 2010 when he searched the public Maryland Judiciary Case Search. (Am. Compl. ¶ 64). He then began contacting LDV

throughout 2011 and early 2012, requesting that he be served at his new address, and even

offering to pay Midland the principal on his account.  (Am. Compl. ¶¶ 64-66, 68, 70, 73;

Midland's Mot. Ex. 1, ECF No. 14-2).  An affidavit for service attached to Midland's Motion to

Dismiss shows Olson was served by substitute service at his new Baltimore City address in

February 2012.  (Midland's Mot. Ex.4, ECF No. 14-5).  On April 4, 2012, Olson filed a request

to transfer venue to Baltimore City.  (Am. Compl. ¶ 73).  Midland filed a consent motion, and

the court transferred the case.  (*Id.*).  Before the scheduled trial date, however, Olson moved

again to Calvert County.  (Am. Compl. ¶ 74).  When he appeared in court on August 22, 2012, in

Baltimore City, Midland moved to strike service and to transfer venue.  (Am. Compl. ¶ 75).  The

court granted Midland's motion and the case was transferred to Calvert County.  (*Id.*).

Olson claims Midland and LDV violated provisions of the FDCPA, the MCDCA, and the

MCPA in seven ways.  First, Olson claims Midland and LDV violated 15 U.S.C. §§ 1692e,

1692e(2)(A), 1692e(4), 1692e(5), 1692e(10), 1692f, and 1692f(1), as well as § 14-202(8) of the

MCDCA and § 13-303 of the MCPA, by seeking an affidavit judgment against him in state court

without the proper documentation required under Maryland law.  (Am. Compl. ¶¶ 89(a), 90(a),

91(a), 92(a), 93(a), 94(a), 95(a), 102, 110).  Second, Olson alleges Midland and LDV violated

the same provisions by filing a lawsuit to collect the debt when it did not have legal grounds to

do so and misrepresented its standing.  (Am. Compl. ¶¶ 89(b), 90(b), 91(b), 92(b), 93(b), 94(c),

95(b), 103, 110).  Third, Olson claims Midland and LDV's use of a "scattershot litigation

strategy" designed to deceive consumers into accepting default judgments or to coerce them into

settling violates the above-listed provisions.  (Am. Compl. ¶¶ 89(c), 90(c), 91(c), 92(c), 93(c),

94(d), 95(c), 104, 110).  Fourth, Olson alleges Midland and LDV violated the previously listed

provisions, with the exception of § 1692f(1), by claiming that the sale in which it obtained

ownership rights to Olson's alleged debt was subject to representation or warranty as to

collectibility.  (Am. Compl. ¶¶ 89(d), 90(d), 91(d), 92(d), 93(d), 94(e), 105, 110).  Fifth, Olson

claims Midland and LDV violated §§ 1692d, 1692e, 1692e(10), and 1692f of the FDCPA by

sending him updated interest worksheets on the amount he owed while refusing to serve him

with the collection lawsuit and moving to change venue to the county where Olson lived when he

did appear in court on August 22, 2012.  (Am. Compl. ¶¶ 89(e), 93(f), 94(b), 94(f), 97).  Sixth,

Olson claims Midland and LDV violated § 1692e(10) of the FDCPA by having no meaningful

attorney involvement when it filed suit against Olson.  (Am. Compl. ¶ 93(e)).  Seventh, and

finally, Olson claims MCM violated § 1692c(a)(2) of the FDCPA by communicating with him

when Midland knew Olson was represented by counsel with respect to the subject debt.  (Am.

Compl. ¶ 96).

Midland and LDV seek dismissal on the grounds that some of Olson's FDCPA claims are

time-barred and that he has failed to state a claim upon which relief can be granted.  The court

finds that all of Olson's claims are either time-barred or fail to state a cause of action.

## ANALYSIS

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled

allegations of the complaint as true," and "construe the facts and reasonable inferences derived

therefrom in the light most favorable to the plaintiff."  *Ibarra v. United States*, 120 F.3d 472, 474

(4th Cir. 1997).  "Even though the requirements for pleading a proper complaint are substantially

aimed at assuring that the defendant be given adequate notice of the nature of a claim being

made against him, they also provide criteria for defining issues for trial and for early disposition

of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "The

mere recital of elements of a cause of action, supported only by conclusory statements, is not

sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d

435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a

motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief

above the speculative level . . . on the assumption that all the allegations in the complaint are true

(even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal

citations and alterations omitted). "To satisfy this standard, a plaintiff need not 'forecast'

evidence sufficient to prove the elements of the claim. . . . However, the complaint must allege

sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (quotations and citation

omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to

relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from

conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

## I.      Time-Barred FDCPA Claims

A private action under the FDCPA must be brought within one year of the date of the

alleged violation. *Kouabo v. Chevy Chase Bank, F.S.B.*, 336 F.Supp.2d 471, 475 (D. Md. 2004)

(citing 15 U.S.C. § 1692k(d)). Olson filed suit against Midland and LDV on May 20, 2013.

(Notice of Removal, ECF No. 1, ¶ 1). Because much of the conduct Olson alleges to have

violated the FDCPA occurred prior to May 20, 2012, many of his claims are time-barred.

### A.  Filing of Updated Interest Worksheets

Olson's claims regarding the filing of updated interest worksheets are time-barred. Olson

alleges Midland violated §§ 1692d, 1692e, and 1692f by continuing to file updated interest

worksheets with the court in the underlying collection suit even though it allegedly had not yet served him with the suit and moved to strike service and transfer venue when Olson did appear for trial.[1]  (Am. Compl. ¶¶ 89(e), 93(f), 94(f), 97).  The last interest worksheet to which Olson objects was filed on March 19, 2012.  (Am. Compl. ¶ 72).  This falls outside the one-year limitations period, and his claims are time-barred.

### B. Claims Regarding Midland's Filing of a Collection Lawsuit

All of Olson's claims founded on the filing of a collection lawsuit against him are time-barred.  For the purpose of calculating the statute of limitations, courts vary as to whether an FDCPA violation based on the filing of a lawsuit occurs at the time of filing or upon service.  *Compare Serna v. Law Office of Joseph Onwuteaka, P.C.*, 732 F.3d 440, 445 (5th Cir. 2013) (finding that a violation of § 1692i(a)(2) occurs when the debtor receives notice of the filed lawsuit), *and Johnson v. Riddle,* 305 F.3d 1107, 1113 (10th Cir. 2002) ("We hold that, where the plaintiff's FDCPA claim arises from the instigation of a debt collection suit, the plaintiff does not have a 'complete and present cause of action,' . . . until the plaintiff has been served." (internal citations omitted)), *with Naas v. Stolman,* 130 F.3d 892, 893 (9th Cir. 1997) ("We hold that the statute of limitations began to run on the filing of the complaint in the Municipal Court."), *and Blakemore v. Pekay*, 895 F. Supp. 972, 983 (N.D. Ill. 1995) (measuring the statute of limitations from the date a legal action was instituted); *see also Winemiller v. Worldwide Asset Purchasing,*

---

[1] It should be clarified that the court reads Olson's claim as alleging that the filing of interest worksheets is what constituted the alleged harassing, deceptive, and unfair and unconscionable conduct, and that filing them while refusing to serve Olson and moving to strike service and transfer venue is what rendered the conduct violative.  (*See* Am. Compl. ¶¶ 89(e), 93(f), 94(f), 97).  To the extent Olson claims independent violations on the basis of Midland's filing of a motion to strike service and transfer venue to the county of Olson's residence on August 22, 2012, when both parties were in court, (*see* Am. Compl. ¶ 86), he fails to state a claim.  He does not allege any facts as to why filing such a motion, or its granting by the court, would constitute harassing behavior in violation of § 1692d, deceptive conduct in violation of § 1692e, or unfair or unconscionable conduct in violation of § 1692f.  Olson himself appears to have tried earlier in the state court litigation to transfer venue to his place of residence so "the case could be contested in a proper venue."  (Am. Compl. ¶ 70).  To now allege Midland violated the FDCPA by doing the same, especially where the state court granted Midland's motion, is without merit.

*LLC*, 2011 WL 1457749, at *3 (D. Md. 2011) (noting it can be either date)[2]; *Prade v. Jackson & Kelly*, 941 F. Supp. 596, 600 (N.D.W.V. 1996) (same).  The distinction does not make a difference, however, in this case.  Midland filed its collection lawsuit against Olson in December 2010 and, although Midland never personally served Olson, it effected service in February 2012 by leaving a copy of the complaint with Olson's roommate at the Baltimore City address where Olson had previously requested he be served.  (Am. Compl. ¶ 47; Midland's Mot. Ex. 1, ECF No. 14-2; Midland's Mot. Ex. 4).[3]  Thus, regardless of when the statute of limitations started to run—the date of filing the lawsuit or the date of service—Olson filed suit against Midland more than a year later, barring his claims.

Olson claims he was never properly served and thus the statute of limitations should not have begun to run until he appeared in court on August 22, 2012, allegedly waiving service. (Am. Compl. ¶ 87).  His claim is without merit.  Serving an individual "by leaving a copy of the summons, complaint, and all other papers . . . at the individual's dwelling house or usual place of abode with a resident of suitable age and discretion" is a proper form of service for lawsuits filed in the state district court of Maryland.  Md. Rule 3-121(a).  Olson does not allege he did not live at the address in Baltimore City at the time of service.  In fact, he alleges he told LDV that he wished to be served at that address.  (*See* Am. Compl. ¶¶ 66, 68; Midland's Mot. Ex. 1).  Olson's

---

[2] Unpublished cases are cited only for the soundness of their reasoning, not for any precedential value.

[3] Although not included in the complaint, the court can consider Olson's March 9, 2011, letter to LDV and the affidavit of service filed in the state district court collection action in deciding Midland and LDV's motions to dismiss.  Olson relies on the letter in making his claims against Midland and LDV, (*see* Am. Compl. ¶ 66), and does not dispute its authenticity, *see Am. Chiropractic Ass'n v. Trigon Healthcare Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) ("[W]hen a defendant attaches a document to its motion to dismiss, a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity." (internal quotation marks and citation omitted)), and courts can consider matters of public record when deciding a motion to dismiss, *see Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) ("In reviewing a Rule 12(b)(6) dismissal, we may properly take judicial notice of matters of public record."); *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009) ("[A] federal court may consider matters of public record such as documents from prior state court proceedings in conjunction with a Rule 12(b)(6) motion.").

bald assertion that he was never served appears instead to be based on a misreading of the

affidavit of service.  Olson claims the affidavit shows service was attempted by serving someone

alleged to be Olson's roommate at a residence in St. Mary's County.  (*See* Am. Compl. ¶ 71;

Pl.'s Opp'n, ECF No. 15, at 14, 14 n.4).[4]  The affidavit clearly shows, however, that although the

summons was issued from St. Mary's County, the complaint and summons were delivered to

Olson's roommate at the Baltimore City address at which he had previously requested service.

(Am. Compl. ¶ 66; Midland's Mot. Exs. 1, 3, 4).  There is nothing to suggest, and Olson does not

claim, that service effected by leaving the papers with Olson's roommate at the Baltimore City

address was improper.  Nothing in the FDCPA or related case law, of which this court is aware,

requires that a party be personally served with a lawsuit for the statute of limitations to run when

other forms of service are proper under state law.  Further, it appears Olson had notice of the

suit, and filings made in the suit, prior to May 20, 2012, as he admits he found out about it in

December 2010, he states he filed a request to transfer venue in April 2012, and he makes

allegations that he was "harassed" by Midland's filing of updated interest worksheets on March

28, 2011, November 21, 2011, and March 19, 2012.  (Am. Compl. ¶¶ 64, 67, 69, 72, 73).  The

facts alleged do not make it plausible that Olson had not been served or did not have proper

notice of the lawsuit and its contents until or after May 20, 2012.

Olson's argument that his claims are not time-barred because the ongoing litigation

constitutes a continuing violation, (Am. Compl. ¶ 85; Pl.'s Opp'n, at 48-49), is also without

merit.  This is not a case in which a plaintiff alleges the debt collector engaged in repeated

conduct, some of which occurred within the limitations period and some outside the period, as

---

[4] Although Olson cites to the affidavit of service attached to Midland's original motion to dismiss, the exhibit is the
same as that attached to Midland's motion to dismiss the amended complaint.  (*See* Midland's Mot. Ex. 4, ECF No.
10-5; Midland's Mot. Ex. 4, ECF No. 14-5).

occurred in the case on which Olson relies.  *See Tucker v. Mann Bracken, LLC*,  2009 WL

151669, at *3-4 (M.D. Penn. 2009) (finding repeated phone calls, only some of which were

within the limitations period, constituted a continuing violation).  Instead, Olson's claims grow

out of the actual filing of the lawsuit and the contents of the filing, a discrete occurrence, limited

in time.[5]  The mere existence of an ongoing collection suit does not constitute a continuing

violation.  *See Fontell v. Hassett*, 870 F. Supp. 2d 395, 404 (D. Md. 2012) (finding the placement

of a lien on the plaintiff's property was a definitive action and its continuing existence did not

constitute a continuing violation of the FDCPA); *Martin v. Sessoms & Rogers, P. A.*, 2010 WL

3200015, at *3 (E.D.N.C. 2010) ("The course of debt-collection litigation, without more, is not a

'continuing violation' of the FDCPA.").

Olson's claims alleging violations of the FDCPA on the basis of Midland and LDV filing

suit against him, and the contents of Midland's complaint, are time-barred.

## II.        Section 1692c Claim

Olson's only surviving FDCPA claim is against Midland Credit Management.  He alleges

MCM violated § 1692c(a)(2) by sending him a privacy notice on May 8, 2013, when it knew

Olson was represented by counsel.  (Am. Compl. ¶¶ 81, 96).  Section 1692c(a)(2) of the FDCPA

bars debt collectors from "communicat[ing] with a consumer in connection with the collection of

any debt . . . if the debt collector knows the consumer is represented by an attorney with respect

to such debt and has knowledge of, or can readily ascertain, such attorney's name and address."

"It is well established that 'the threshold requirement for application of the [FDCPA] is that

---

[5] Olson's claims stemming from the filing of the lawsuit are that 1) the documentation attached to the complaint was insufficient to prove Midland's claim, 2) Midland and LDV filed suit without standing or legal recourse to do so, 3) Midland and LDV engaged in a strategy of scattershot litigation by filing suit against Olson, 4) Midland and LDV misrepresented the warranties attached to the sale of Olson's account from Chase Bank to Midland, and 5) Midland and LDV filed suit without meaningful attorney involvement.  (*See e.g.*, Am. Compl. ¶¶ 89, 93(e), 96).

prohibited practices are used in an attempt to collect a debt.'" *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 725 (D. Md. 2011) (quoting *Mabe v. G.C. Serv. Ltd. P'ship*, 32 F. 3d 86, 87-88 (4th Cir. 1994)). Not every communication sent by a debt collector to a debtor is subject to the FDCPA. *See Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011); *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384-85 (7th Cir. 2010). Because the communication at issue was not made "in connection with the collection of any debt," Olson fails to allege sufficient facts making it plausible that MCM engaged in conduct violating § 1692c.

Although the Fourth Circuit has not yet addressed the issue, other courts, including district courts within the Fourth Circuit, have generally looked to three factors to determine whether a communication is made "in connection with the collection of any debt": 1) whether the communication included a demand for payment or had the "animating purpose" to induce payment, 2) the relationship between the parties, and 3) the purpose and context of the communication.[6] *See Gburek*, 614 F.3d at 385-86; *Penn v. Cumberland*, 883 F. Supp. 2d 581, 587-88 (E.D. Va. 2012); *Johnson v. Brock & Scott, PLLC*, 2012 WL 4483916, at *15-16 (E.D.N.C. 2012); *McDermott v. Randall S. Miller & Assoc., P.C.*, 835 F. Supp. 2d 362, 370-71 (E.D. Mich. 2011).

Although the relationship between Olson and Midland militates in favor of finding the privacy notice at issue here to be a communication made in connection with collection, the notice does not appear to have the animating purpose of inducing payment, nor does the purpose and context of the notice connect it to debt collection. The notice only describes how Midland

---

[6] The plaintiff's argument that interpretations of the phrase within the context of § 1692e do not provide insight into the phrase as it is used in § 1692c, (Pl.'s Opp'n, at 46), is without merit. Courts apply the same analysis under either section. *See Gburek*, 614 F.3d at 382 (equating the phrase in the two provisions); *Nash v. Green Tree Serv., LLC*, 943 F. Supp. 2d 640, 652-53 (E.D. Va. 2013) (using the three factors to determine the application of § 1692c(a)(2)).

collects, uses and secures "customer information".  (Am. Compl. Ex. 1, ECF No. 11-1, at 2).

The notice nowhere references Olson's debt or Midland's debt collecting activities.  *Cf. Stricklin*

*v. Jefferson Capital Sys., LLC*, 2011 WL 5325735, at *7 (S.D. Ill. 2011) (refusing to hold, as a

matter of law, that a privacy notice was *not* sent in connection to collecting a debt, where the sole

relationship between the parties was debtor and debt collector and the letter made statements

such as "[y]ou have the right to ask us to stop communicating with you about this debt" and "this

communication is from a debt collector").  Further, Olson does not allege the notice was sent

with any other communication that did reference his debt.  *See Ruth v. Triumph P'ships*, 577

F.3d 790, 798-99 (7th Cir. 2009) (finding a privacy notice was a communication made in

connection with collection because of the debtor/collector relationship and the fact that it was

sent with a collection letter), *Castro v. Green Tree Serv. LLC*, -- F. Supp. 2d --, 2013 WL

4105196, at *10-11 (S.D.N.Y. 2013) (same).  With nothing but the relationship between Olson

and Midland supporting a finding that the privacy notice is a communication sent in connection

with collecting a debt, the court cannot find it plausible that the notice is a communication

regulated by § 1692c.  To hold otherwise, on the basis of the relationship alone, would mean any

time a debt collector communicated with a debtor the communication would be subject to

regulation under the FDCPA, an outcome not contemplated by the statute.  *See Grden*, 643 F.3d

at 173; *Gburek*, 614 F.3d at 384-85.

The link provided on the notice to www.mcmprivacy.com does not undermine this

finding.  Although a notice referring the debtor to some other communication that demands

payment may constitute a communication in connection with collecting a debt, *see Grden*, 643

F.3d at 173 (noting that such a communication will "almost certainly" have the purpose of

inducing payment by a debtor), the privacy notice does not indicate that visiting the website is

related to paying off Olson's debt, *compare Gburek*, 614 F.3d at 386 (finding a letter

encouraging the debtor to call the collector to discuss debt settlement options was a

communication in connection with an attempt to collect a debt), *with Nash v. Green Turtle Serv.,*

*LLC*, 943 F. Supp. 2d 640, 655 (E.D. Va. 2013) (finding letters notifying the debtor of her

account representative, providing a link to the collector's website to review the debtor's account

information, and providing a phone number to call for more information were not sent in

connection with collection).  The privacy notice only appears to direct readers to the site to

obtain more information regarding the privacy policy.

Further, the presence on the webpage of a "Make a Payment" link, disclaimer, and phone

number to call for more information do not make the page a demand for payment, as alleged by

Olson, (Am. Compl. ¶ 80; Am. Compl. Ex. 2, ECF No. 11-2), such that the link renders the

notice a communication regulated by § 1692c.  There is no indication the phone number is

available for debt collection purposes.  *See Nash*, 943 F. Supp. 2d at 655.  In addition, the "Make

a Payment" link does not demand payment, refer to any delinquent debt, or provide any

indication that Olson has past due payments.  Merely offering a website visitor the opportunity to

pay, in the top toolbar of the page, is not a demand or inducement to pay an overdue debt.  *See*

*Bailey v. Security Nat. Serv. Corp.*, 154 F.3d 384, 388-89 (7th Cir. 1998) (holding a letter

informing debtors of their current account status, listing due dates for future payments, and

warning that failure to pay would result in acceleration was not a communication made in

connection with collecting a debt); *Gillespie v. Chase Home Fin., LLC*, 2009 WL 4061428, at *5

(N.D. Ind. 2009) (finding a letter was not sent in connection with collection where it informed

debtors that options may be available to resolve their delinquencies, but did not provide terms of payment or deadlines, threaten further collection proceedings, or demand payment in any form). Finally, the disclaimer that the webpage is a communication from a debt collector and is an attempt to collect a debt is not dispositive. *See Boosahda v. Providence Dane LLC*, 462 F. App'x 331, 334-35 (4th Cir. 2012) ("[I]f the use of the statutorily required disclaimer is sufficient to establish an FDCPA claim, debt collectors will be placed in a conundrum, exposed to liability for both including the disclaimer and for omitting it."); *Gburek*, 614 F.3d at 386 n.3 (noting that the absence or presence of a such a disclaimer does not have dispositive significance in triggering the protections of the FDCPA); *Wade v. Reg'l Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir. 1996) (describing the disclaimer as "informational"). Thus, with nothing else on the webpage indicating it is a demand for payment or attempt to induce payment on Olson's debt, the disclaimer alone cannot render the privacy notice linking to the website a communication made in connection with collecting a debt. Olson has failed to state a claim under § 1692c(a)(2).

## III.    MCDCA and MCPA Claims

Finally, Olson claims Midland and LDV "claim[ed], attempt[ed], or threaten[ed] to enforce a right with knowledge that the right does not exist," in violation of the Maryland Consumer Debt Collection Act. Md. Code Ann., Comm. Law, § 14-202(8). "This has been held to mean that a party may not attempt to enforce a right with actual knowledge or with reckless disregard as to the falsity of the existence of the right." *Kouabo*, 336 F. Supp. 2d at 475 (citing *Spencer v. Hendersen-Webb*, 81 F. Supp. 2d 582, 594-95 (D. Md. 1999)). Any violation of the MCDCA is a *per se* violation of the MCPA. *See* Md. Code Ann., Comm. Law, § 13-301(14)(iii). Olson never alleges that Midland does not own the obligation, that Olson does not owe the debt,

12

or that the debt is time-barred.[7]  The conduct Olson claims violated the MCDCA—filing a lawsuit with documentation insufficient to warrant a judgment on affidavit under Maryland Rule 3-306—does not undermine Midland's right to seek repayment of debt Midland reasonably believes it legally owns.  Nor does it undermine LDV's ability to bring suit on Midland's behalf.  Olson has not, therefore, plausibly alleged that Midland or LDV attempted to enforce any right with knowledge it did not exist, and he has not stated a claim under either Maryland statute.

## CONCLUSION

For the reasons stated above, the defendants' motions to dismiss will be granted.  Further, while Olson has indicated a desire to amend his complaint again if the court granted the defendants' motions to dismiss, (Pl.'s Opp'n, at 50), he has offered no proposed amended complaint nor any specific factual allegations that would overcome the deficiencies of his current complaint.  *See HCMF Corp. v. Allen*, 238 F.3d 273, 276 (4th Cir. 2001) ("A motion to amend should be denied [when] . . . the amendment would be futile.") (internal citation and quotation marks omitted).   Accordingly, the dismissal shall be without leave to amend.  A separate order follows.

December 18, 2013       
Date

_____/s/_____       
Catherine C. Blake       
United States District Judge

---

[7] Olson's claim that Midland misrepresented its standing and did not have legal recourse against him appears to be based solely on his allegation that Midland did not have sufficient evidence to prove its claim, (*see* Pl.'s Opp'n, at 32-34), not on any allegation that the debt does not exist as alleged, such that Midland did not have a right to collect. In fact, as previously mentioned, Olson offered at least once to pay the principal on his account, (Midland's Mot. Ex. 1), seeming to recognize the validity of the debt.